Finn W. Dusenbery
LAW OFFICE OF FINN W. DUSENBERY
26 Broadway, 21st Fl
New York, NY 10004
Tel: (212) 583-0030
Fax: (646) 786-3250

*Attorney for Plaintiff*

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**           Index No.:
------------------------------------------------------------x
**IDRICE NANA,**

      **Plaintiff,**                                    **COMPLAINT**

  v.

**LE VIKING LLC, d/b/a BISTRO CHEZ
LUCIENNE, MALCOLM 308 LLC,
THIERRY GUIZONNE, and FALL FARA,**

      **Defendants.**
------------------------------------------------------------x

    Plaintiff alleges as follows:

## JURISDICTION AND VENUE

    1.    This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"). This Court has supplemental jurisdiction over the New York state law claims, as they are so related to the claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

    2.    Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

1

**PARTIES**

3.     All Defendants are hereinafter collectively referred to as "Defendants."

4.     Defendant LE Viking LLC d/b/a Bistro Chez Lucienne ("Chez Lucienne") is a New York corporation and restaurant located at 308 Lenox Ave, New York, NY 10027.  Upon information and belief, Chez Lucienne has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce and has an annual gross volume of sales in excess of $500,000.

5.     Defendant Malcolm 308 LLC ("Malcolm 308") is a New York corporation.  Upon information and belief, Malcolm 308 has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce and has an annual gross volume of sales in excess of $500,000.

6.     Upon information and belief, Defendant Chez Lucienne and Malcolm 308 (collectively, "Company Defendants") operate as a single integrated enterprise and/or joint employer.

7.     Upon information and belief, Company Defendants share the same owners, Defendant Thierry Guizonne and Defendant Fall Fara.

8.     Upon information and belief, Company Defendants share the same managers, including Defendant Thierry Guizonne and Defendant Fall Fara.

9.     Company Defendants have interrelated operations, as Defendant Malcolm 308 issued five checks to Plaintiff Nana for his work at Defendants' restaurant from January 25, 2016 to December 31, 2016, yet Defendant Chez Lucienne issued Plaintiff Nana a W2 form for his work at Defendants' restaurant in 2016.

10. Company Defendants have centralized control of labor relations, as Plaintiff Nana has received checks issued by Defendant Chez Lucienne and Defendant Malcolm 308 at the same location at Defendants' restaurant at 308 Lenox Ave, New York, NY 10027.

11. Upon information and belief, Defendant Chez Lucienne and Defendant Malcolm 308 each have 11 or more employees.

12. Upon information and belief, Defendant Thierry Guizonne is an owner of Company Defendants and exercises sufficient control of Company Defendants' day to day operations to be considered Plaintiff's employer under the FLSA and New York law.

13. Defendant Guizonne has the ability to hire and fire Plaintiff Nana and other employees of Defendants.

14. For example, Defendant Guizonne has fired Defendants' employees named Tiffany (last name unknown), Max (last name unknown), and Vegas (last name unknown).

15. Defendant Guizonne has the power to set Defendants' employees' rates of pay, as Defendant Guizonne paid Plaintiff Nana a bank check for $1,500.00 after Plaintiff Nana complained to Defendant Guizonne that he had not been able to cash five checks for $300 each.

16. Defendant Guizonne also signed checks and handed them to Plaintiff Nana.

17. Defendant Guizonne directs Defendants' employees' work. For example, Defendant Guizonne has directed Defendants' employees to serve tables and to stop talking with one another.

18. Upon information and belief, Defendant Fall Fara is an owner of Company Defendants and exercises sufficient control of Company Defendants' day to day operations to be considered Plaintiff's employer under the FLSA and New York law.

19. Defendant Fara has the ability to hire and fire Plaintiff Nana and other employees of Defendants.

20. For example, after Defendant Guizonne fired Max at some time before June 2016, Defendant Fara re-hired Max around December 2016 and subsequently fired her the same month.

21. Defendant Fara directs Defendants' employees' work. For example, Defendant Fara has directed Plaintiff Nana to make food and drinks for him.

22. Plaintiff Idrice Nana ("Plaintiff Nana") has been employed by Defendants from around 2009 to the present.

## FACTS

23. Defendants committed the acts alleged in this Complaint knowingly, intentionally and willfully.

24. Defendants knew that nonpayment of minimum wage, overtime, spread of hours, illegal retention of gratuities, and failure to provide required notices violated federal and state laws.

25. Plaintiff Nana has been employed by Defendants from around 2009 to the present.

26. For about the first three years of his employment, Plaintiff Nana was a server and, beginning around 2012, worked both as a server and bartender for a period of about five or six months.

27. After about five or six months working as both a server and bartender, Plaintiff Nana began working solely as a bartender and did this for the rest of his employment with Defendants.

28. From the beginning of his employment to around January 2016, Plaintiff Nana generally worked on Wednesday and Thursday, from 4 p.m. to 11 p.m., on Friday and Saturday

from 4 p.m. to 2 a.m. or sometimes later, and on Sunday from 11 a.m. to 5 p.m., without any breaks, for a total of about forty (40) hours per week.

29. From around January to March 2016, Plaintiff Nana generally worked on Wednesday and Thursday, from 4 p.m. to 11 p.m., on Friday and Saturday from 4 p.m. to 2 a.m. or sometimes later, on Sunday from 11 a.m. to 5 p.m., and often worked an extra shift each week from about 4 p.m. to 11 p.m., without any breaks, for a total of about forty-seven (47) hours per week.

30. From around March to June or July 2016, Plaintiff Nana generally worked on Wednesday and Thursday, from 4 p.m. to 11 p.m., on Friday and Saturday from 4 p.m. to 2 a.m. or sometimes later, and on Sunday from 11 a.m. to 5 p.m., without any breaks, for a total of about forty (40) hours per week.

31. From around June or July 2016 to the end of January 2017, Plaintiff Nana generally worked on Tuesday, Wednesday and Thursday, from 4 p.m. to 11 p.m., on Saturday from 4 p.m. to 2 a.m. or sometimes later, and on Sunday from 11 a.m. to 5 p.m., without any breaks, for a total of about thirty-seven (37) hours per week.

32. Around the end of January 2017 to present, Plaintiff Nana has generally worked on Tuesday, Wednesday and Thursday, from 4 p.m. to 11 p.m., and on Saturday from 4 p.m. to 2 a.m. or sometimes later, without any breaks, for a total of about thirty-one (31) hours per week.

33. When Plaintiff Nana started working solely as a bartender, Plaintiff Nana was paid $50 per shift.

34. Around the end of 2014, Plaintiff Nana received a raise to $75 per shift.

35. Around the beginning of 2015, Plaintiff Nana's pay was reduced to $60 per shift.

5

36. Around February 2015, Plaintiff Nana's pay was again raised to $75 per shift for the rest of 2015.

37. From January 25, 2016 to December 31, 2016, Defendants only paid Plaintiff Nana $1,500.00.

38. Specifically, at different times around September and October 2016, Defendants gave Plaintiff Nana five checks for $300 per check ("the five 2016 checks").

39. While Defendant Chez Lucienne had issued prior checks to Plaintiff Nana, Defendant Malcolm 308 issued the five 2016 checks, which were signed by Defendant Guizonne.

40. Plaintiff Nana tried to cash the five 2016 checks but could not because Defendant Malcolm 308's checking account had insufficient funds.

41. Plaintiff Nana complained that he could not cash the five 2016 checks to Defendant Guizonne, who gave Plaintiff Nana a bank check for $1,500.00, which Plaintiff Nana was finally able to cash.

42. Despite that Defendant Malcolm 308 issued the five 2016 checks, Defendant Chez Lucienne sent Plaintiff Nana a 2016 W2 form.

43. Since January 1, 2017, Defendants have only paid Plaintiff Nana $960 in total, giving Plaintiff Nana one check for $300 for one week of work and one check for $660 for two weeks of work, respectively, issued by Defendant Malcolm 308 and signed by Defendant Fara.

44. Defendants did not pay Plaintiff the federal or state minimum wage for all hours worked.

45. Defendants were not entitled to reduce the minimum wage by applying the tip credit allowance that is available in cases under 29 U.S.C. 203(m) and 12 N.Y.C.R.R. §§ 137-1.5

6

and 146-1.3 because Defendants did not provide appropriate notice of the tip credit; paid Plaintiff for his credit card tips late by as much as a month or more when Plaintiff's cash sales did not cover credit card tips in a shift; and two managers named Audrey Betti and Frederick Chirol illegally retained tips from the tip pool – which pool included Plaintiff Nana – even though Ms. Betti and Mr. Chirol were not eligible to receive tips.

46. Ms. Betti was employed by Defendants as a manager from around March to December 2016.

47. Ms. Betti had the power to hire and fire Defendants' employees. For example, Ms. Betti hired two of her friends, one of whom was named Yvonne (last name unknown).

48. Ms. Betti also scheduled Defendants' employees and gave checks out to them.

49. Mr. Chirol was employed by Defendants as a manager from around September 2015 to the middle of 2016.

50. Mr. Chirol had the power to hire and fire Defendants' employees. For example, Mr. Chirol hired three people, including his brother-in-law, Osvaldo Pacheco.

51. Defendants did not pay Plaintiff Nana an overtime premium of one and a half times Plaintiff Nana's regular rate for hours worked in excess of forty (40) per week.

52. Defendants did not pay Plaintiff Nana a spread of hours premium of one hour of pay at the basic minimum hourly rate when his workdays exceeded ten (10) hours per day.

53. Defendants never provided Plaintiff Nana with the notices required by New York Labor Law § 195.

## FIRST CLAIM FOR RELIEF
(FLSA Minimum Wage Violations, 29 U.S.C. §§ 201, *et seq.*)

54. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

55. At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203. At all relevant times, Defendants have employed "employee[s]" including Plaintiff.

56. Throughout the relevant statute of limitations period, Defendants knowingly failed to pay Plaintiff the federal minimum wage for each hour worked.

57. Plaintiff seeks damages in the amount of his unpaid minimum wage compensation, liquidated (double) damages as provided by the FLSA for minimum wage violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
**(New York State Minimum Wage Violations, N.Y. Lab. L. §§ 650 *et seq.*, 12 N.Y. Comp. Codes R. & Regs. Tit. 12, § 146-1.2)**

58. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

59. Throughout the relevant statute of limitations period, Defendants did not pay Plaintiff the New York minimum wage for all hours worked.

60. Defendants' failure to pay Plaintiff the New York minimum wage was willful.

61. Plaintiff seeks damages in the amount of his unpaid minimum wage compensation, liquidated damages as provided by the New York Labor Law for minimum wage violations, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### (FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.*)

62. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

63. Throughout the relevant statute of limitations period, Plaintiff regularly worked in excess of forty (40) hours per workweek.

64. At all relevant times, Defendants willfully failed and refused to pay Plaintiff an overtime premium of one and a half times Plaintiff's regular rate for hours worked in excess of forty (40) per workweek and willfully failed to keep records required by the FLSA and relevant regulations even though the Plaintiff has been and is entitled to overtime.

65. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff at the required overtime rate of one and a half times Plaintiff's regular rate for hours worked in excess of forty (40) hours per workweek.

66. Plaintiff seeks damages in the amount of his unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## FOURTH CLAIM FOR RELIEF
### (New York State Overtime Violations, N.Y. Lab. L. §§ 650 *et seq.*
### N.Y. Comp. Codes R. & Regs., tit. 12, § 146-1.4)

67. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

68. It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

69.     Throughout the relevant statute of limitations period, Defendants willfully, regularly and repeatedly failed to pay Plaintiff at the required overtime rate of one-and-one-half times Plaintiff's regular rate for hours worked in excess of forty (40) hours per workweek.

70.     Plaintiff seeks damages in the amount of his unpaid overtime compensation, liquidated damages as provided by the New York Labor Law for overtime violations, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### FIFTH CLAIM FOR RELIEF
### (New York Spread of Hours Provisions, N.Y. Lab. L. § 650 *et seq.*, N.Y. Comp. Code R. & Regs. tit. 12, § 146-1.6)

71.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

72.     Throughout the relevant statute of limitations period, Plaintiff's workdays sometimes lasted more than ten (10) hours.

73.     Throughout the relevant statute of limitations period, Defendants willfully and intentionally failed to compensate Plaintiff one hour's pay at the basic New York minimum hourly wage rate when Plaintiff's workday lasted more than ten (10) hours, as required by New York law.

74.     As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

### SIXTH CLAIM FOR RELIEF
### (Illegal Deductions from Gratuities, N.Y. Lab. L. §§ 193, 196-d and 198-b)

75.     Plaintiff realleges and incorporates by reference all previous paragraphs.

76. Pursuant to NYLL § 196-d, "[n]o employer or his agent or an officer or agent of any corporation, or any other person…shall demand or accept, directly or indirectly, any part of the gratuities, received by an employee, or retain any part of a gratuity or of any charge purported to be a gratuity for an employee."

77. Defendants illegally retained gratuities from Plaintiff Nana and, as a result of Defendants' unlawful conduct, Plaintiff was denied tips to which he was otherwise entitled.

78. Defendants willfully and intentionally violated § 196-d of the NYLL.

79. As a result of Defendant's willful and unlawful conduct, Plaintiff is entitled to an award of damages, including liquidated damages, in amount to be determined at trial, pre- and post-judgment interest, and costs and attorneys' fees, as provided by N.Y. Lab. Law § 663.

### SEVENTH CLAIM FOR RELIEF
### (New York Notice Requirements, N.Y. Lab. L. §§ 195, 198)

80. Plaintiff realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

81. Defendants did not provide Plaintiff with the notices required by N.Y. Lab. Law § 195.

82. As a result of Defendants' unlawful conduct, Plaintiff is entitled to an award of damages pursuant to N.Y. Lab. Law § 198, in amount to be determined at trial, pre- and post-judgment interest, and attorneys' fees and costs as provided for by N.Y. Lab. Law § 663.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

A. An award of damages, according to proof, to be paid by Defendants;

B. Liquidated damages and penalties available under applicable laws;

C. Costs of action incurred herein, including expert fees;

    D.    Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, N.Y. Lab. L. § 663 and other applicable statutes;

    E.    Pre-judgment and post-judgment interest, as provided by law; and

    F.    Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: New York, New York  
       February 8, 2017

Respectfully submitted,

By:  
/s/ Finn W. Dusenbery_____  
Finn W. Dusenbery  
LAW OFFICE OF FINN W. DUSENBERY  
26 Broadway, 21st Fl  
New York, NY 10004  
Tel: (212) 583-0030  
Fax: (646) 786-3250

*Attorney for Plaintiff*